**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 13-cv-2430-RM-KMT

LEPRINO FOODS COMPANY,

    Plaintiff,

v.

DCI, INC.,

    Defendant.

---

**OPINION AND ORDER**

---

On September 6, 2013, plaintiff Leprino Foods Company ("plaintiff") filed a Complaint against defendant DCI, Inc. ("defendant"), asserting the following five claims: (1) breach of contract and breach of express warranties related to a 2001 agreement between the parties ("the 2001 Agreement"); (2) breach of contract and breach of express warranties related to a 2007 agreement between the parties ("the 2007 Agreement"); (3) negligent nondisclosure related to the 2001 Agreement; (4) negligent nondisclosure related to the 2007 Agreement; and (5) negligent misrepresentation related to the 2007 Agreement. (ECF No. 1.) Plaintiff brings it's claims under State law, and seeks monetary damages. The dispute in this case concerns 26 crystallizer tanks ("the Equipment") manufactured by defendant pursuant to the 2001 and 2007 Agreements. (*See* ECF No. 160 at 6; ECF No. 161 at 1.) More to the point, the dispute centers around the alleged leaking and/or cracking of the Equipment after its exposure to chlorides and other substances. Plaintiff alleges that the leaking/cracking of the Equipment breached warranties contained in the 2001 and

2007 Agreements, and defendant's failure to disclose and/or misrepresentation of facts relevant to the Equipment's potential for leaking/cracking constituted negligence.

Pending before the Court are opposing motions for summary judgment; specifically, plaintiff's motion for partial summary judgment ("plaintiffs' motion for summary judgment") (ECF No. 161), and defendant's motion for summary judgment ("defendant's motion for summary judgment") (ECF No. 160), along with accompanying statements of undisputed material facts for both motions (ECF Nos. 161-1, 169). The parties have filed opposing responses to the motions for summary judgment (ECF Nos. 181, 184-1), and responses to the statements of undisputed material facts (ECF Nos. 174-1, 181-1). The parties have also filed replies in support of their respective motions for summary judgment (ECF Nos. 189, 191), and reply statements of undisputed material facts (ECF Nos. 189-1, 191-1). In addition to the above mentioned dispositive motions, defendant has also filed a motion to exclude plaintiff's rebuttal experts ("the motion to exclude"). (ECF No. 165). Plaintiff has filed a response to the motion to exclude (ECF No. 178), and defendant has filed a reply (ECF No. 190).

With all motions being fully briefed, the Court makes the following findings.

**I.      Legal Standard for Summary Judgment**

Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Initially, the movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). If this burden is met, then the non-moving party must set forth specific facts showing that there is a genuine

dispute for trial. *Id*. at 324. A fact is material if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is genuine if a rational trier of fact could find for the non-moving party. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the non-moving party. *Adams*, 233 F.3d at 1246. However, a mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). Instead, a non-movant "must proffer facts such that a reasonable jury could find in her favor." *Id*.

## II. Discussion[1]

### A. Breach of Contract/Breach of Express Warranties

Both parties seek summary judgment as to the breach of contract/warranty claims (Claims 1 and 2). In doing so, the parties raise a host of arguments pertaining to defendant's alleged breach of various alleged express warranties contained within the 2001 and 2007 Agreements, ranging from defendant's assertion of a statute of limitations defense to defendant arguing that the allegedly express warranties are so inexact that they do not actually exist. Ultimately, the Court can resolve the breach of warranty claims on one issue: the statute of limitations.

In Colorado, a claim for breach of warranty, ordinarily, accrues "when tender of delivery is made," regardless of the innocent party's knowledge of the breach. Colo. Rev. Stat. § 4-2-725(2). However, as with all things in the statutory world, there is an exception to the accrual-on-delivery rule. Specifically, when "a warranty explicitly extends to future performance of the goods and

---

[1] The Court sets forth the relevant evidence and material facts in its discussion *infra*.

3

discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." *Id*. The Court refers to this as the "future performance" exception.

Here, plaintiff relies upon identical language in § 6.3 of the 2001 and 2007 Agreements. (*See* ECF No. 184-1 at 14-16.)² Given its import, the Court recites the pertinent parts of the provision below:

> All goods, materials and equipment furnished under this Agreement will be fit for the purpose intended as specified in the Agreement, of good quality, new, free from faults and defects (whether patent or latent) in material or workmanship and in conformance with this Agreement (which includes all exhibits attached hereto).… The provisions of this Paragraph shall survive acceptance of the Equipment by Leprino, and shall run to Leprino's successors, assigns, customers and users of Leprino's product. The provisions of this Paragraph shall not be deemed waived by reason of Leprino's inspection, acceptance or payment.

(ECF No. 161-2 at ¶ 6.3; *see also* ECF No. 161-3 at ¶ 6.3) (strikethrough omitted).

Plaintiff argues that the second sentence quoted *supra* (the one discussing survival of the provision) unambiguously extends performance of the warranties quoted in the first sentence to the future, citing the decision from another Judge of this Court in *Leprino Foods Co. v. Feldmeier Equip., Inc.*, 2006 WL 278550 (D. Colo. Feb. 3, 2006). In *Feldmeier*, the court found that identical language "guarantee[d] future performance" of the product in question, and thus, the statute of limitations accrued when the plaintiff knew or should have known when the product was defective. *Id*. at *4.

Although *Feldmeier* may appear to provide plaintiff with the result that it needs in this case, this Court disagrees with the *Feldmeier* court's finding that the language quoted *supra* explicitly

---

² The Court uses the page numbers assigned by the CM/ECF system in the top right-hand corner of the relevant pleading, rather than any other page number that may appear elsewhere in said pleading.

guarantees the future performance of the Equipment at issue here. First, the persuasiveness of the finding in *Feldmeier* is diminished by the lack of analysis therein of Colorado case law interpreting the future performance exception, and the lack of explanation as to why the pertinent language guarantees future performance. Instead, the court in *Feldmeier* appears to have found (without discussion) that future performance was guaranteed merely because the provision stated that it ran to the plaintiff's successors and survived acceptance. As discussed *infra*, this Court does not believe that is so, at least not explicitly for purposes of Colo. Rev. Stat. § 4-2-725(2) ("§ 4-2-725(2)").

Second, review of Colorado case law reflects that the tenor of its interpretation of the future performance exception is inconsistent with the finding in *Feldmeier*. The parties discuss three principal cases: *Glen Peck, Ltd. v. Fritsche*, 651 P.2d 414 (Colo. App. 1981); *Smith v. Union Supply Co.*, 675 P.2d 333 (Colo. App. 1983); and *Boyd v. A.O. Smith Harvestore Prods., Inc.*, 776 P.2d 1125 (Colo. App. 1989). (*See* ECF No. 160 at 9-10; ECF No. 184-1 at 15-16.) In *Glen Peck*, the Colorado court found that an express warranty explicitly extended to future performance because the warranty guaranteed the performance of bulls as breeders, "not only at the moment of purchase but at some future date as well, namely, after being used on cows known to be breeders." 651 P.2d at 415 (quotation omitted). Similarly, in *Smith*, the Colorado court found that a warranty explicitly extended to future performance, as the warranty unconditionally guaranteed the performance of a roof for a period of five years. 675 P.2d at 335. In *Boyd*, the Colorado court found that a warranty, promising to repair or replace any part of a purchase proved to be defective, did not explicitly guarantee future performance because the warranty did not guarantee that the equipment would not malfunction. 776 P.2d at 1129. In reaching this finding, the court explained that a key characteristic of a future performance warranty was that it "guarantees the performance of the product itself for a stated period of time." *Id*. at 1128 (emphasis omitted).

5

Although the Court agrees with plaintiff that *requiring* a warranty to guarantee performance for a stated period of time may be more than § 4-2-725(2) requires in every case (*see* ECF No. 184-1 at 14-15), the Court does agree with the court in *Boyd* that, for a warranty to *explicitly* extend to future performance, the warranty "must expressly provide a guarantee that the product will perform as promised in the future." *See Boyd*, 776 P.2d at 1128. In that light, the decisions in *Glen Peck*, *Smith*, and *Boyd* make sense because tying the warranty to, respectively, a future event, a fixed period of time extending into the future, or none of the above, explicitly indicates that the warranty was either meant to extend to future performance or not. Thus, while a guarantee for a stated period of time may not be a requirement, as the court in *Boyd* explained, it is a "key" factor distinguishing future performance warranties.[3]

Here, the language in § 6.3 that plaintiff relies upon does not expressly guarantee that the Equipment will perform as promised in the future. In fact, the language does not even mention equipment or performance of the same. Instead, the language states only that the warranties in § 6.3 will survive acceptance, and that the provision runs to plaintiff's successors. (*See* ECF No. 161-2 at ¶ 6.3.) Taking these two clauses separately, the 'survive acceptance' clause merely means that, if there is a breach of § 6.3, the buyer (plaintiff) can still enforce the provision even though the buyer has accepted the goods being sold. This language does not speak at all to the future performance of the goods. Similarly, the 'running to successors' language does not speak to future performance of any goods; it merely allows a successor to enforce the provision. For example, it is quite easy to imagine a scenario where, after signing a contract but *before* accepting delivery of any goods, a contracting party could be succeeded by a different entity. Section 6.3 allows for this. As for § 6.3

---

[3] Put another way, while a stated period of time may not be essential, it is certainly appears helpful under Colorado law.

running to "the users of Leprino's product," although this may suggest that a product may be produced at some point in the future, it does not provide any clarity as to whether the warranties are meant to extend to the Equipment's future performance. The warranties could just as easily extend to only the performance or quality of the Equipment upon delivery, and still run to the future users of plaintiff's product.

This state of affairs is particularly true of the warranties upon which plaintiff relies. In plaintiff's motion for summary judgment, plaintiff relies upon warranties to provide goods that were: fit for the purpose intended; in conformance with the 2001 and 2007 Agreements; and free from defects in material and workmanship. (ECF No. 161 at 9.) None of these warranties *explicitly* extend to future performance. Arguably, the warranties could extend to future performance, but, equally as easily (and perhaps more so) they could simply extend to the state of the Equipment when delivered. This lack of clarity is just not enough under § 4-2-725(2), which requires an *explicit* extension to future performance.

The finest example of this quandary for plaintiff is the warranty to provide goods in conformance with the 2001 and 2007 Agreements. Plaintiff asserts that this warranty was breached when defendant failed to comply with a third party's recommendations for properly applying "Thurmolax 70" to the exterior of the Equipment and for preparing the surfaces of the Equipment prior to applying Thurmolax 70. (*Id*. at 12-14.) In other words, plaintiff argues that defendant breached a warranty *prior* to delivery of the Equipment. Thus, the warranty was breached upon delivery. Arguably, the warranty was still breached when the Equipment was performing in the future, but this does not mean the warranty extends to future performance. Moreover, § 4-2-725(2) requires that "discovery of the breach *must* await the time of [future] performance." Colo. Rev. Stat.

§ 4-2-725(2) (emphasis added). Given that, here, the warranties are not tied to some future event, time, or other moment indicating future performance, discovery of defendant's alleged breach did not require waiting for the time of future performance, as the breach was discoverable upon delivery.

Ultimately, § 4-2-725(2) requires an explicit extension of a warranty to future performance, and, here, there is nothing explicit about the language in § 6.3 of the 2001 and 2007 Agreements with respect to the future performance of the Equipment. Therefore, the Court finds that the warranties at issue in this case do not extend to future performance for purposes of § 4-2-725(2). The result of this is that plaintiff's causes of actions accrued when the Equipment was delivered. *See* Colo. Rev. Stat. § 4-2-725(2). For Claim 1, this was in 2003. (ECF No. 191-1 at ¶ 16.) For Claim 2, this was in late 2008. (*Id*. at ¶ 17.) The parties do not agree how long the limitations period is for breach of warranty claims; with plaintiff arguing it is three years, and defendant arguing it is two years. (*See* ECF No. 160 at 13-14; ECF No. 184-1 at 12-13.) The Court need not resolve this dispute, as under either formulation plaintiff's breach of warranty claims, which were brought in 2013, are untimely.

Accordingly, the Court GRANTS defendant's motion for summary judgment with respect to Claims 1 and 2, and DENIES plaintiff's motion for summary judgment in full.

### B.     Negligent Nondisclosure

Plaintiff raises two negligent nondisclosure claims related, respectively, to the 2001 Agreement (Claim 3) and the 2007 Agreement (Claim 4). Plaintiff relies upon the following alleged nondisclosures: (1) defendant's knowledge that the Equipment manufactured from 304 stainless steel should not have been exposed to any chlorides, including in the cooling water (2001 and 2007 Agreements); (2) defendant's knowledge that the Equipment could have been manufactured with chloride free insulation (2001 and 2007 Agreements); (3) defendant's knowledge that it did not

intend to comply with the manufacturer's specifications and recommendations in applying Thurmolax 70 to the Equipment (2001 and 2007 Agreements); (4) defendant's knowledge that the Equipment was not intended to be exposed to any corrosives, including chlorides (2001 and 2007 Agreements); and (5) defendant's knowledge of increasing corrosion problems with equipment manufactured from 304 stainless steel, as reported to defendant by its customers (2007 Agreement).

Defendant argues in reply that the evidence upon which plaintiff relies to support these alleged nondisclosures does not, in fact, serve the alleged purpose of supporting them. (*See* ECF No. 191 at 12-14.) To a large extent, if not in total, the Court may agree with defendant's arguments in this regard, as, having reviewed the evidence in support of plaintiff's allegations of nondisclosure, it is in most, if not all, instances meager to irrelevant at best. However, it is not necessary for this Court to address the evidentiary deficiencies piece-by-piece because there is a even more substantial deficiency in plaintiff's negligent nondisclosure claims. Specifically, plaintiff asserts that, in order for defendant to be liable, defendant must, *inter alia*, have a duty to disclose information. (*See* ECF No. 184-1 at 20-21.) This Court agrees. *See Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 564 (Colo. App. 2004) (explaining that, to succeed on a claim of fraudulent nondisclosure, a plaintiff must show that the defendant had a duty to disclose material information).[4]

Plaintiff cites the Restatement (Second) of Torts ("the Restatement") § 551(2) ("§ 551(2)") to support its argument that a duty to disclose existed here. (ECF No. 184-1 at 21.) More specifically, plaintiff mentions three of the five scenarios under the Restatement where a duty to disclose exists: (1) when a fiduciary or other relationship of trust and confidence exists ("subsection

---

[4] Although *Poly Trucking* involved a claim of fraudulent nondisclosure, the Court sees no reason why the principle of needing a duty to disclose does not apply equally to a claim sounding in negligence, especially given that the *Poly Trucking* court relies upon the Restatement (Second) of Torts.

9

(a)"); (2) when a partial or ambiguous statement of facts would be misleading without disclosure of known facts ("subsection (b)"); and (3) when a party is about to enter into a transaction under a mistake of facts basic to the transaction, and the same party would reasonably expect disclosure of those facts due to the relationship between the parties, the customs of the trade, or other objective circumstances ("subsection (e)"). (*Id.*, citing Restatement (Second) of Torts § 551(2)(a), (b), (e) (1977)). As an initial matter, with respect to plaintiff's *nondisclosure* claims, plaintiff makes no attempt to argue that any of defendant's alleged statements were made misleading by an undisclosed fact. (*See id.* at 22.) Plaintiff does allege that defendant's alleged *misrepresentations* with respect to Claim 5 were "false and misleading" (*id.* at 23), but this has nothing to do with plaintiff's nondisclosure claims. Therefore, the Court does not further address whether defendant's alleged statements were misleading for purposes of Claims 3 and 4.

Turning to the other two examples of where a duty to disclose exists, plaintiff asserts that defendant owed such a duty to plaintiff due to "the parties' relationship of trust and confidence, the historic relationship between them, and other objective circumstances." (*See id.* at 21.) Specifically, plaintiff asserts that: it purchased equipment from defendant for decades prior to the events at issue in this case; defendant held itself out as an expert in the design and manufacture of equipment to fit a customer's intended uses; defendant collected information from plaintiff to custom design and manufacture the Equipment to plaintiff's needs; defendant provided solutions to plaintiff's needs by recommending construction materials and the type of cooling medium; plaintiff turned to defendant for guidance following the discovery of discolored or cracked equipment; and defendant's President acknowledged the parties' special relationship. (*Id.* at 21-22.)

As an initial matter, in discussing the alleged facts *supra*, plaintiff makes no attempt to explain whether those facts pertain to subsection (a) or subsection (e) of § 551(2). Plaintiff appears to be under the assumption that simply relaying various superficially appealing facts is enough to satisfy its burden of establishing that defendant was under a duty to disclose. *See Poly Trucking*, 93 P.3d at 564 (stating that "a *plaintiff* must show that the defendant had a duty to disclose material information") (emphasis added). As explained *infra*, this assumption was misguided at best.

First, plaintiff fails to explain how the parties having a decades long business relationship transforms the same into one resembling a fiduciary relationship of trust and confidence or one requiring disclosure of facts basic to their transactions. (*See* ECF No. 184-1 at 21-22.) Second, the evidence upon which plaintiff relies for the assertion that defendant held itself out as an expert in manufacturing equipment to fit its customers' needs does not support that assertion. (*See id*. at 21 (citing Exhibits 1, 11, and 35)). Exhibit 1 (ECF No. 174-3) does not discuss any expertise; instead, it merely discusses services defendant provides and the process under which it delivers those services. In that regard, the services and process set forth in the exhibit indicate, if anything, that they are collaborative in nature, relying less upon expertise and more upon "on-going communications" between a customer and defendant. Plaintiff's reliance upon the so-called "DCI Process" reflects this further. (*See* ECF No. 184-1 at 21.) As plaintiff asserts, defendant collected information from plaintiff, and then provided proposals for the design and manufacture of equipment. (*See id*.) As with the rest of plaintiff's assertions, there is no explanation as to how this process of information collection, proposal submission, and manufacture transformed the parties relationship into one creating a duty to disclose under the Restatement.

Exhibit 11 (ECF No. 174-10) is a portion of a deposition transcript, yet plaintiff does not provide a pinpoint citation to the relevant testimony. To the extent that it is Page 220:4-Page 222:25, the Court notes that the only testimony that plaintiff was able to elicit from the witness was that defendant held itself out to the public as an expert in the manufacture of dairy industry tanks. (*See* ECF No. 174-10 at 220:4-10.) Plaintiff was not able to elicit, despite counsel's best efforts to obtain it, that defendant held itself out as an expert in manufacturing equipment to fit its customers intended uses (*see id*. at 220:11-222:25), which is the asserted purpose of the evidence (*see* ECF No. 184-1 at 21). The fact that defendant may or may not be an expert in the field of manufacturing dairy industry tanks does not seem to be anything extraordinary, at least not in terms of whether a relationship for purposes of the Restatement existed, and especially when plaintiff provides no explanation of why that should be the case. Exhibit 35 (ECF No. 174-20), in a similar vein as Exhibit 1, merely describes, on one page, the "DCI Process," and, on the other, contains what can best be described as subjective marketing material. Although the marketing material states that defendant's "general product excellence lends confidence to customers" (*id*. at 2), and the description of the "DCI Process" states that defendant has a "sharp focus on your needs, your expectations, and on putting our process to work for you" (*id*. at 3 (ellipsis omitted)), defendant again fails to explain how these statements transformed the parties' relationship into one that the Restatement requires a duty to disclose.

Plaintiff also asserts that it turned to defendant for guidance following the discovery of problems with the Equipment in 2009 and 2012. (ECF No. 184-1 at 22.) This may be so, but it does not appear to bear a great deal of relevance to the parties' relationship when the alleged

nondisclosures took place before the consummation of the 2001 and 2007 Agreements.[5] The same is true of plaintiff's assertion that defendant's President acknowledged the parties' special relationship. (*Id.*) The evidence relied upon for this statement is an email from June 2010, and appears to relate to discussions with plaintiff about future transactions unrelated to the ones at issue in this case. (*See* ECF No. 176 (stating that the discussions with plaintiff represented a "great opportunity for a large project")).

This represents the entirety of the evidence alleged to support plaintiff's position that defendant was under a duty to disclose. As discussed *supra*, the Court finds it insufficient in that regard. To the extent plaintiff is attempting to show that it relied so fully upon defendant's expertise that it needed all basic facts to be disclosed, the evidence simply does not support this level of reliance. In addition, the Court notes that plaintiff fails to provide any legal argument as to why or how the Restatement applies to the evidence upon which it relies, including failing to cite to any supporting case law.

The Court further notes that the only legal source upon which plaintiff relies—the Restatement—does not support plaintiff's contention that subsections (a) or (e) of § 551(2) apply here. With respect to subsection (a), the Restatement commentary states that "[o]ther relations of

---

[5] The Court also notes in this regard that, although plaintiff may have relied upon defendant for "guidance" with respect to potential corrosion damage to the Equipment, this was not necessarily reasonable reliance. Notably, the proposals from defendant for the manufacture of the Equipment explicitly state that defendant was not "responsible for the corrosion resistance of, or any resulting damage to, equipment used in contact with corrosive materials (salts, free chlorides, or other corrodents) without written acceptance of such corrosive conditions by [defendant]." (*See, e.g.*, ECF No. 176-10 at ¶ 15.) Although this "Corrosion Limitation" may not be relevant to plaintiff's breach of contract/breach of warranty claims because it was not included in the parties' final agreements, the Court finds that it is relevant, based upon the objective circumstances of the parties' relationship, as to whether defendant would know that plaintiff reasonably expected disclosure of facts related to the corrosion potential of the Equipment. *See* Restatement (Second) of Torts § 551(2)(e) (1977).

trust and confidence include those of the executor of an estate and its beneficiary, a bank and an investing depositor, and those of physician and patient, attorney and client, priest and parishioner, partners, tenants in common and guardian and ward." Restatement (Second) of Torts § 551 cmt. f (1977). In addition, the commentary states that "certain types of contracts, such as those of suretyship or guaranty, insurance and joint adventure, are recognized as creating in themselves a confidential relation and hence as requiring the utmost good faith and full and fair disclosure of all material facts." *Id*. Put simply, plaintiff has made no effort to draw a comparison, and the Court discerns no comparison, between the relationships or contracts identified in the Restatement commentary, and the relationship plaintiff alleges existed between itself and defendant or the 2001 and 2007 Agreements.

With respect to subsection (e), the Restatement commentary provides guidance as to its application. Notably, the commentary states that:

> It is extremely difficult to be specific as to the factors that give rise to this known, and reasonable, expectation of disclosure. In general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware.

Restatement (Second) of Torts § 551 cmt. l (1977).

Plaintiff has, again, failed to explain how the facts of this case compare to the "extreme and unfair" circumstances needed to bring the same into the ambit of subsection (e). These failings doom plaintiff's claims for negligent nondisclosure. Accordingly, because plaintiff has failed to

present any evidence of a genuine dispute that a duty to disclose existed,[6] defendant's motion for summary judgment is GRANTED with respect to Claims 3 and 4.

### C.   Negligent Misrepresentation

In Colorado, a claim for negligent misrepresentation requires plaintiff to show that (1) defendant supplied false information to plaintiff in a business transaction, (2) defendant failed to exercise reasonable care in obtaining or communicating the false information, and (3) plaintiff justifiably relied upon the information. *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995) (citing *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 919 (Colo. App. 1991)).

In support of this claim, plaintiff relies upon the following representations: (1) defendant's recommendation to manufacture the Equipment's cooling jackets from "Duplex 2101"; and (2) defendant's statement that Thurmolax 70 resists chloride induced stress cracking and corrosion. (ECF No. 184-1 at 23.)  Plaintiff asserts that these representations created a "false and misleading impression" that upgrades to the Equipment would adequately protect the same from corrosion damage.  (*Id.*)[7]  To support plaintiff's assertion that defendant created a "false and misleading

---

[6] The Court further finds that, with respect to § 551(2)(e), plaintiff has presented no evidence that defendant knew plaintiff was "about to enter into [their transactions] under a mistake" as to basic facts. There is simply no evidence in the record of defendant's knowledge with respect to whether plaintiff was proceeding with their transactions under a mistake of fact, such as that the Equipment might not fail if exposed to chlorides.

[7] It is noteworthy that plaintiff concedes that the representations related to Duplex 2101 and Thurmolax 70 were "true statements."  (ECF No. 184-1 at 23.)  In other words, plaintiff appears to concede that defendant did not supply false information.  Instead, plaintiff appears to believe that it is enough that defendant's representations allegedly created a "misleading impression."  (*See id.*)  Whether creating a "misleading impression" is sufficient to establish a *negligent misrepresentation* claim in Colorado is far from clear.  *See Burman*, 821 P.2d at 919 ("since there was no allegation here, or evidence presented, that false information was supplied, there can be no negligent misrepresentation.").  For present purposes, however, the Court need not take this issue any further.

impression," plaintiff relies upon one piece of evidence: deposition testimony of plaintiff's then Vice President of technical services, whey production, and environmental operations. (*See id*.; *see also* ECF No. 176-20 at 8:13-15). Plaintiff cites to a large swath of testimony, and, as with plaintiff's deficiencies with respect to Claims 3 and 4, makes no attempt to explain how the deposition testimony in any way lends itself to being considered as evidence that defendant created a false or misleading impression about the Equipment.

In any event, were the Court to dive into the deposition testimony in the hope of finding support for plaintiff's position, it would be disappointed. As an initial matter, the only superficially pertinent language from the transcript comes from the mouth of the questioner. Notably, the deponent is told that one of defendant's officers stated in some unknown document that plaintiff should consider using Duplex 2101 for all dimple jackets because plaintiff had had problems with other materials. (ECF No. 176-20 at 122:20-24.) In response to a question, the deponent then stated that he did not recall telling defendant's officer that plaintiff had had problems with the same materials. (*Id* at 122:25-123:4.) The next piece of potentially interesting discussion from the transcript is where the questioner presents the deponent with an email from the same officer of defendant, and reads from the email a statement that "the duplexes" are "excellent against chloride pitting and stress corrosion cracking." (*Id*. at 123:9-124:11.) The deponent is then asked whether the information he received from defendant's officer "impacted your decision to ultimately use 2101 Duplex stainless steel on the dimple jackets," to which the deponent replies, "I believe it did." (*Id*. at 124:12-19.) The deponent then testifies that he would have been the individual to recommend using Duplex 2101 to his boss. (*Id* at 124:23-125:5.)

This testimony provides no support for the proposition that defendant's representations about Duplex 2101 and Thurmolax 70 created a false or misleading impression that the Equipment would be adequately protected. First, there is no mention of Thurmolax 70 in the cited testimony. Second, although Duplex 2101 is clearly the focus of the testimony, the furthest the deponent goes is in testifying that he believed that the information received from defendant *impacted* plaintiff's decision to use Duplex 2101. There is no development of the testimony beyond this. Most glaringly, there is no testimony that the deponent believed, based upon defendant's information, that the Equipment manufactured in 2007 would be adequately protected from corrosion damage. Without any indication from the cited testimony of a misled or false impression in that regard, the testimony is essentially worthless for its relied upon purpose.

Finally, even if plaintiff had presented evidence in support of it being allegedly misled, the Court notes that there is no argument, and certainly no evidence presented, that defendant failed to exercise reasonable care in obtaining or communicating the allegedly false or misleading information. (*See generally* ECF No. 184-1 at 23.) This is particularly problematic, given that, in its motion for summary judgment, defendant presented evidence and argument as to why it reasonably believed that Duplex 2101 would provide better protection against stress corrosion cracking. (*See* ECF No. 160 at 22-23.)

With all of this in mind, the Court GRANTS defendant's motion for summary judgment with respect to Claim 5.

### III.  Conclusion

For the reasons set forth herein, the Court:

(1)  GRANTS defendant's motion for summary judgment (ECF No. 160);

(2)  DENIES plaintiffs' motion for partial summary judgment (ECF No. 161); and

(3)  DENIES AS MOOT defendant's motion to exclude plaintiff's rebuttal experts (ECF No. 165).

The Clerk is instructed to enter Final Judgment in favor of defendant, and then CLOSE this case.

The Order setting this case for trial (ECF No. 202) is VACATED.

**SO ORDERED.**

DATED this 3rd day of January, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge